**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                    Plaintiff-Applicant,<br><br>       v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                    Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                    Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>RADCLIFF INVESTMENTS LIMITED, ROTHSCHILD TRUST GUERNSEY LIMITED, and ROBERT D. SALEM,<br><br>                    Defendants. | Adv. Pro. No. 10-04517 (SMB) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**ROTHSCHILD TRUST GUERNSEY LIMITED'S**
<u>**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

Jeff E. Butler
Rijie Ernie Gao
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

Dated: July 31, 2017

*Attorneys for Defendant*
*Rothschild Trust Guernsey Limited*

## TABLE OF CONTENTS

Introduction .................................................................................................................................1

Argument .....................................................................................................................................1

    I.    THE FAC DOES NOT PLAUSIBLY ALLEGE THAT RTG
        WAS THE INITIAL TRANSFEREE. .................................................................................1

    II.   THE FAC DOES NOT ALLEGE THAT RTG WAS THE BENEFICIARY
        OF THE INITIAL TRANSFERS. ........................................................................................4

Conclusion ...................................................................................................................................5

# TABLE OF AUTHORITIES

### Cases

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
  130 F.3d 52 (2d Cir. 1997) ............................................................................................. 2

*Finley Grp. v. Working Media Grp. Atlanta, LLC (In re Redf Mktg., LLC)*,
  536 B.R. 646 (Bankr. W.D.N.C. 2015) ...................................................................... 2, 3

*Gallant v. Kanterman (In re Kanterman)*,
  97 B.R. 768 (Bankr. S.D.N.Y. 1989) ............................................................................. 5

*Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*,
  452 B.R. 467 (Bankr. S.D.N.Y. 2011) ....................................................................... 4, 5

*Mano-Y&M Ltd. v. Field (In re Mortg. Store, Inc.)*,
  773 F.3d 990 (9th Cir. 2014) ......................................................................................... 2

*Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*,
  234 B.R. 293 (Bankr. S.D.N.Y. 1999) ........................................................................... 5

*Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*,
  293 B.R. 116 (S.D.N.Y. 2003) ............................................................................. 3, 4, 5

### Statutes

11 U.S.C. § 550(a) ............................................................................................................ 1, 2

Defendant Rothschild Trust Guernsey Limited ("RTG") respectfully submits this Reply Memorandum in Further Support of Its Motion to Dismiss the First Amended Complaint.

## Introduction

This motion raises the apparently novel question of whether a plaintiff can plausibly allege that two different corporate entities are the initial transferee of a single transfer. The First Amended Complaint ("FAC") clearly and unequivocally alleges that Radcliff Investments Limited ("Radcliff") was a valid corporate entity, that the relevant BLMIS account was in the name of Radcliff, and that Radcliff was the initial transferee of two payments from BLMIS. The FAC goes on to allege, however, that RTG was the initial transferee of the same payments. These allegations are not pleaded in the alternative. Rather, the FAC alleges that two different corporate entities—Radcliff and RTG—are both initial transferees of the same payments. This is not only implausible, it is logically impossible.

The Trustee attempts to rescue its claim by alleging, in the alternative, that RTG is the entity for whose benefit the transfers to Radcliff were made. No facts are alleged, however, to suggest that RTG directly benefited from the initial transfers to Radcliff. Even if the allegations in the FAC are true, RTG is alleged to have benefited no more than any corporate parent would benefit from a monetary transfer to its corporate subsidiary. This is not sufficient for liability under the "entity for whose benefit such transfer was made" prong of Section 550(a).

## Argument

### I. THE FAC DOES NOT PLAUSIBLY ALLEGE THAT RTG WAS THE INITIAL TRANSFEREE.

The Trustee's opposition brief completely ignores the highly-plausible allegation that Radcliff was the initial transferee of transfers from BLMIS. According to the FAC, Radcliff was an independent corporate entity under the laws of the Cayman Islands (FAC ¶ 7) and Radcliff

1

was the named account holder of the relevant BLMIS account (*id.*; *see also id.* Ex. A). It would have been standard practice at BLMIS to transfer the funds from this account to the named account holder. Consistent with this, the FAC indicates that the funds were sent to a JPMorgan subaccount in the name "Rotrust re Radcliff Investment Limited" (*id.* ¶ 8) and that "Radcliff is an initial transferee" of those funds (*id.* ¶ 7). There are no facts alleged to explain why BLMIS would have sent the funds to anyone other than the named account holder.

It stands to reason that, absent unusual circumstances, there can be only one initial transferee. The plain language of Section 550(a)(1) refers to "the initial transferee" in the singular. It does not say "any initial transferee" or "one or more initial transferees." Moreover, courts have made it clear that the initial transferee is the *first* party to receive the funds and have the right to dispose of them. *See Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 56 (2d Cir. 1997) (noting the distinction between "the first entity to touch the disputed funds" and the initial transferee under Section 550(a)); *Mano-Y&M Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 995 (9th Cir. 2014) (holding the initial transferee is "[t]he first party to establish dominion over the funds after they leave the transferor").

*Finley Grp. v. Working Media Grp. Atlanta, LLC (In re Redf Marketing, LLC)*, 536 B.R. 646 (Bankr. W.D.N.C. 2015), is not to the contrary. That case involved transfers through a law firm trust account that were later disbursed to various defendants. The court did not view the law firm as the initial transferee of the funds, and denied the defendants' motions to dismiss because of factual issues concerning "which entity held the first right to put the money to their own purposes." *Id.* at 661. *Redf Marketing* does not suggest that more than one entity can be the initial transferee of a transfer. The issue in *Redf Marketing* was who exercised legal dominion

2

and control over the trust account. The court held that it was unable to make that determination because "numerous versions of the trust agreement have been referenced, some unsigned." *Id.* In this case, there is no comparable uncertainty about which entity first exercised legal dominion and control over the funds. The FAC plausibly alleges that the transfers were made to Radcliff and also alleges, without plausibility, that they were made to RTG.[1]

The Trustee repeatedly emphasizes allegations that RTG personnel managed the Radcliff account (FAC ¶ 43), that RTG referred to the Radcliff account as "our account" (*id.* ¶ 44) and represented that RTG was the "ultimate beneficial owner" of the Radcliff account (*id.* ¶ 42). These alleged facts are all consistent with RTG acting as an agent for Radcliff. They do not plausibly imply that RTG—and not Radcliff—was the true initial transferee of transfers from BLMIS.

The FAC does not allege—even on information and belief—that RTG was the legal owner of the transfers from BLMIS. The opposition brief states, without citation, that "the Complaint alleges that Rothschild was the owner of the funds in the BLMIS Account." (Tr. Opp. Br. (hereinafter "Opp.") 10. ) What the FAC actually alleges is that RTG informed BLMIS that it was the "ultimate beneficial owner" of the funds in the Radcliff account. (*See* FAC ¶ 42.) In any event, what matters is not who owned the Radcliff *account*, but who first exercised legal dominion and control over the transferred funds. There is no allegation that RTG was the first legal owner of the transferred funds, or even that RTG actually received the funds.

The Trustee claims that *Tese-Milner v. Brune (In re Red Dot Scenic, Inc.)*, 293 B.R. 116 (S.D.N.Y. 2003), supports his position. He is wrong. The court in *Red Dot* held that the

---

[1] It might have been the case in *Redf Marketing* that funds were disbursed from the trust account to multiple defendants. That does not imply that multiple entities are the initial transferees of the same transfer. Rather, it implies that the transfer should be characterized as multiple smaller transfers to multiple defendants.

3

principal of the debtor corporation was not the initial transferee because the principal did not receive the funds in his personal account and only "caused the debtor corporation to transfer money direct to a personal creditor." *Id.* at 122. The court found instead that the principal was the beneficiary of the initial transfer to the creditor. *See id.* at 117. The only relevant lesson from *Red Dot* is that arranging or causing a payment to be made, as RTG is alleged to have done here, does not make the arranger the initial transferee.

Notably, the Trustee does not argue in the alternative that the initial transferee could be either RTG or Radcliff, and that discovery is needed to resolve such a dilemma. The Trustee maintains instead that Radcliff is the initial transferee and that RTG is also the initial transferee. Those allegations, taken together, are not plausible. At bottom, the Trustee is simply seeking to collapse the corporate distinction between Radcliff and RTG, its alleged corporate parent. There are no allegations in the FAC, however, that would justify disregarding the corporate forms in this case.

### II.    THE FAC DOES NOT ALLEGE THAT RTG WAS THE BENEFICIARY OF THE INITIAL TRANSFERS.

The Trustee argues, in the alternative, that RTG is the entity for whose benefit the transfers to Radcliff were made. This theory has no factual support in the FAC. The Trustee states that "Rothschild directly benefitted from the transfers" (Opp. 15), but does not cite any allegation in the FAC to back up this statement. Indeed, in the section of the Trustee's opposition brief addressing this argument, there is not a single citation to any allegation in the FAC.

It is plainly insufficient to merely allege that RTG was a beneficiary of the BLMIS transfers by virtue of being a corporate parent of Radcliff or the "ultimate beneficial owner" of the funds in Radcliff's BLMIS account. *See Gowan v. Novator Credit Mgmt. (In re Dreier LLP)*, 452 B.R. 467, 478-79 (Bankr. S.D.N.Y. 2011) (dismissing allegations of "closely intertwined"

4

relationship, linked "financial conditions," and "unsubstantiated assertions that, because of the corporate structure," defendant-entities were beneficiaries of initial transfers). Moreover, the FAC makes no allegation of any concrete benefit flowing to RTG, such as the performance of a written agreement to pay funds, *see In re Red Dot Scenic, Inc.*, 293 B.R. at 117, additional fees to RTG as a result of "effecting the movement of funds," *see Sec. Inv'r Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314-15 (Bankr. S.D.N.Y. 1999), or security for a bank loan, *see Gallant v. Kanterman (In re Kanterman)*, 97 B.R. 768, 778 (Bankr. S.D.N.Y. 1989). Without such allegations, the Trustee's claim that RTG is the beneficiary of transfers fails as a matter of law.

The Trustee's reliance on *In re Kanterman* is misplaced. That case holds that under certain circumstances, a two-stage transfer may treated as a single transfer and that the second transferee can be deemed the "entity for whose benefit" the initial transfer was made. *See id.* at 778. Here, there is no alleged " second stage" transfer to RTG. Indeed, the FAC does not even hint at "another previously agreed and nearly contemporaneous transfer" as was alleged in *In re Kanterman*. *Id*.

Without any allegation in the FAC that RTG directly benefited from an initial transfer to Radcliff, the Trustee's argument that RTG is the "entity for whose benefit" the transfer was made should be rejected as a matter of law.

5

**Conclusion**

For the foregoing reasons, the Trustee's remaining claim against RTG should be dismissed with prejudice.

Dated: July 31, 2017
New York, New York.

Respectfully submitted,

　　S/ Jeff E. Butler
Jeff E. Butler
Email: jeff.butler@cliffordchance.com
Rijie Ernie Gao
Email: ernie.gao@cliffordchance.com

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Defendant*
*Rothschild Trust Guernsey Limited*